## WILLIAMS v. FUERSTENBERG et al.
### (No. 3039.)

Court of Civil Appeals of Texas. Amarillo.
Dec. 19, 1928.

Rehearing Denied Jan. 16, 1929.

J. M. Elliott, of Memphis, and Wear, Stollenwerck & Wear, of Hillsboro, for plaintiff in error.

Davidson & Davidson, of Childress, and Fitzgerald & Grundy, of Memphis, for defendants in error.

814

HALL, C. J. This suit was originally filed by S. T. Cheatham against Mrs. M. Fuerstenberg, the surviving widow of J. C. Fuerstenberg, deceased, and against their ten children, and joined as defendants J. L. Cromartie, W. B. White, and H. B. Hill.

The action is in the form of trespass to try title, and is brought to recover the south 82 acres of section 32 in block H, A. B. & M. surveys in Hall county.

After the suit was filed, the plaintiff in error Williams, by mesne conveyances, acquired Cheatham's title, and the case was tried upon the plaintiff's first amended petition.

The defendants Cromartie, Hill, and White answered, alleging that they were tenants of certain portions of section 32. The Fuerstenbergs answered by general demurrer, general denial, plea of not guilty, and pleas of limitation of 3, 5, 10, and 25 years. Plaintiff filed a supplemental pleading, setting up the insanity of some of his predecessors in title in avoidance of the pleas of limitation.

The record shows that the 82 acres involved in this action are a part of section 32, in block H, A. B. & M. surveys, and that section 39, owned by the Fuerstenbergs, is in block H, B. S. & F. surveys, and that section 39 lies south of and adjacent to section 32. It further appears that the north line of section 39 and the south line of section 32 are identical, and no issue is raised as to the true boundary line of the two sections. No issue is made upon the sufficiency of the pleadings.

The case was submitted to a jury upon special issues, which, together with the answers, are, in substance, as follows:

(1) We find from a preponderance of the evidence that the defendants and their predecessors in title had peaceable and adverse possession of the land sued for by plaintiff, cultivating, using, and enjoying the same for ten consecutive years or more previous to the institution of this suit on July 6, 1925.

(2) The defendants and their predecessors in title were in peaceable and adverse possession of the land in controversy, cultivating, using, and enjoying the same prior to November 28, 1904.

(3) The defendants and their predecessors in title, after being in peaceable and adverse possession of the land, using, cultivating, and enjoying it prior to November 28, 1904, continued in such peaceable and adverse possession, cultivating, using, and enjoying it for a period of ten consecutive years.

In accordance with the verdict, the court entered judgment for the defendants.

The first proposition is based upon the action of the court in sustaining the objections of defendants in error to the introduction of a written agreement, signed by "Rev. M. Fuerstenberg, Administrator, Estate of J. C. Fuerstenberg, Deceased," as party of the first part, and "H. A. McCanne, Guardian, Estate of Joe, Tommy and Willie Anderson, Persons of Unsound Mind." The writing in question recites that it is a memorandum of agreement entered into by and between M. Fuerstenberg, administrator of the estate of J. C. Fuerstenberg, deceased, and H. A. McCanne, guardian of the three Andersons, persons of unsound mind. It further recites, in effect, that the Fuerstenbergs are owners of section 39 and that the Andersons are the owners of section 32, and, "whereas, the fence dividing the said sections of land is not located at the proper place between said sections, it is especially agreed that in order to locate the division lines and fences between said sections of land, the County Surveyor of Hall County shall begin at the southeast corner of section 39 in said block 'H' and run north 1921.5 vrs., and locate a line for fence between said sections of land, thence, west 1958.6 vrs., and establish the northwest corner of section 39 and the southwest corner of section 32 and the line thus run as above directed shall be the division line between said two sections of land."

The defendants objected to the introduction of this evidence for the reason that it was not binding upon any of the defendants, either the wife or children of J. C. Fuerstenberg, deceased, except upon M. Fuerstenberg, because the said M. Fuerstenberg was a foreign administrator or executor under a will; that there was no administration of the estate in Texas; that the will had never been filed or probated in the state, for which reason M. Fuerstenberg, being a foreign administrator, had no power or authority over land in Texas; and, further, because the instrument was obtained by fraud and misstatement as to the true conditions.

■ We think these are specific objections, but if considered as a general objection interposed in behalf of all defendants, the court correctly excluded the instrument. Appellant did not at any time offer the instrument as evidence against M. Fuerstenberg alone. Where evidence is admitted over an objection to the same as a whole, a part of such evidence being admissible and a part inadmissible, no reversible error is committed. It is also the rule that where evidence is offered as a whole, only a part of which is admissible, the court does not commit error in sustaining an objection to such testimony. In such case, it is not the duty of the court, nor of the party objecting to the evidence, to separate the admissible from the inadmissible portions. M., K. & T. Ry. Co. of Texas v. Washburn (Tex. Civ. App.) 184 S. W. 580.

Judge Boyce correctly states the rule in P. & S. F. Ry. Co. v. Cowan (Tex. Civ. App.) 243 S. W. 912, when he says:

"This rule works both ways in the protection of the trial court. If an instrument containing admissible and inadmissible evidence is offered and objected to as a whole, there is no reversible error, whether the instrument be admitted or rejected."

■ The same rules apply when testimony

is offered against several defendants and is admissible as against only one of them. If the court sustains an objection to it when offered against all defendants, it then becomes the duty of the offerer to offer it against the particular defendant or defendants who may be properly bound by it. Berger v. Kirby (Tex. Civ. App.) 135 S. W. 1122; Sullivan v. Fant (Tex. Civ. App.) 160 S. W. 612; Magee v. Paul (Tex. Civ. App.) 159 S. W. 325, 332.

■ We think the objection urged that it was inadmissible because M. Fuerstenberg was a foreign administrator was properly sustained. A foreign administrator has no extraterritorial authority. Faulkner v. Reed (Tex. Com. App.) 241 S. W. 1002, 1007. As said in Hare v. Pendleton (Tex. Civ. App.) 214 S. W. 948, 953 (5 and 6):

"Whatever powers an executor or administrator appointed in one state may exercise over property situated in another state is governed by the laws of the latter state on that subject. Each state has the absolute power to control the administration of the property of decedents situated within its own borders. Our laws do not confer upon one holding a foreign appointment as executor or administrator authority to perform any official act in this state, either in controlling property belonging to the decedent, or in forceably collecting debts due the estate. The only recognition accorded to such representatives by our statute is a preference in receiving an appointment in this state when application is made therefor in order to get possession of property situated within our borders. * * * But that preference is not administrative power; it is a mere privilege to be invoked when the power is applied for. The power must come from the appointment by the proper tribunal in this state and a qualification of the appointee according to our local law. As held in the case of Webster v. Clark [Clarke] above referred to [100 Tex. 333, 99 S. W. 1019, 123 Am. St. Rep. 813], even the recording of a foreign will in Texas confers upon the party named therein as executor no authority to act as such with reference to property of the decedent in this state."

■ Even domiciliary administrators, guardians ad litem and the like, can make no admissions adversely affecting the title of the estates represented by them. Gilbert v. Odum et al., 69 Tex. 670, 7 S. W. 510; Gersdorff v. Torres (Tex. Com. App.) 293 S. W. 560; 2 Jones on Evidence (2d Ed.) 1732, 1789-1791. For a stronger reason, a foreign administrator who has not complied with the requirements of articles 3365 and 3366 and is not duly qualified as an administrator under the statutes of this state can make no admissions which would affect the property of the estate or the interests of the heirs residing in another jurisdiction. What is here said is applicable to the authority of McCanne, the guardian of the non compos mentis An-

dersons at the time he entered into the agreement with M. Fuerstenberg to let the county surveyor of Hall county establish the boundary line between the two sections of land. Admissions of a tenant in common are not admissible against his cotenant. 2 Jones on Evidence (2d Ed.) 1733. The fact that the agreement provides that the county surveyor must find the location of the dividing line shows that neither party had any actual knowledge where the true boundary line between the surveys was really located upon the ground and admissions which are mere matters of opinion or hearsay are not to be received. Austin Electric Co. v. Faust (Tex. Civ. App.) 133 S. W. 449; 22 C. J. 299, 407. No fraud is shown in connection with the execution of this instrument.

■ We find three large blueprint maps inclosed in a separate envelope among the papers of this case, but they are in no way attached to the statement of facts and are not authenticated either by counsel or the trial judge. In this condition they cannot be considered as a part of the statement of facts, and are stricken from the files. Norwood v. McMillian (Tex. Civ. App.) 278 S. W. 331.

■ By several propositions, the appellant attacks the charge of the court. No objections were made to the charge, nor did appellant request the court to give any special charges or submit any special issues. Having failed to present to the court more accurate rate definitions of adverse possession and peaceable possession than those given, appellant has waived the defects, if any, in the court's charge, and cannot be heard to complain here. R. S. arts. 2185, 2186, 2237 (3); Petty v. Griffin (Tex. Civ. App.) 241 S. W. 252; Gulf, C. & S. F. R. Co. v. Conley, 113 Tex. 472, 260 S. W. 561, 32 A. L. R. 1183; Isbell v. Lennox, 116 Tex. 522, 295 S. W. 920; King v. Stamford Mut. Life Ins. Ass'n (Tex. Civ. App.) 8 S.W.(2d) 560.

■ The next contention to be considered is that the court erred in assuming that this suit was filed originally on July 6, 1925, in submitting the first special issue. The original petition is not in the transcript, but the date of the filing of the suit was not controverted, and it is unnecessary to cite authorities sustaining the proposition that the court may in the charge assume uncontroverted facts.

"Notice will uniformly be taken by a court of its own records in the case at bar and all matters patent on the face of the records, including all prior proceedings in the same case." 15 R. C. L. 1133. "Courts will take judicial notice of their own records in the case where it is proper to invoke such notice * * * that is to say, such records need not, if relevant, be introduced in evidence, but will, when produced and identified on the inspection of the judge or by evidence, be accepted by the court as establishing their own existence, indorsements on them and other

facts which such records purport to state, as that a certain case or appeal is pending, that a claim is or is not barred by the statute of limitation," etc. 23 C. J. 109, § 1917. "In a case on trial in any court, its records are actually or constructively before the judge. He will therefore take judicial notice of them and of the facts which they establish." 23 C. J. 110, § 1918. In the note to the text just quoted, numerous cases are cited holding that courts take judicial notice of the date of the institution of the suit as it appears from the record or file marks on the papers. See, also, 1 Jones on Evidence (2d Ed.) 764; Castro v. Whitlock, 15 Tex. 437; Connellee v. Witty (Tex. Civ. App.) 246 S. W. 716; Blair & Hughes Co. v. Short (Tex. Civ. App.) 271 S. W. 199; Covert v. Calvert (Tex. Civ. App.) 287 S. W. 117.

The next proposition is that because the evidence shows that whatever possession was taken of the land was by the tenants of J. C. Fuerstenberg and because no actual possession was ever taken by his widow or children, the verdict is without evidence to support it. The record shows that the tenants of J. C. Fuerstenberg went into possession in 1902, and that Fuerstenberg died on July 4, 1914. If title by inheritance had been acquired by J. C. Fuerstenberg prior to his death, it vested in his heirs and widow at his death. Houston Oil Co. v. Stepney (Tex. Civ. App.) 187 S. W. 1078. Title by inheritance is a sufficient link in the chain to sustain a plea of the statute of limitations. Kennon et al. v. Miller et al. (Tex. Civ. App.) 143 S. W. 987; Whitehead v. Foley, 28 Tex. 1.

It further appears without contradiction that James Vardy, who owned section 32, built the fence on the south side of section 32, as near in a straight line as he could; that at the southwest corner of the section, the fence cut off a small corner in order to get water from Baylor Creek; that this is the fence that was on the north side of 39 and the south side of section 32. The bend in the line, according to this witness, was made in order to leave the opening for cattle to pass and for a roadway. About four years thereafter, Jackson Collier, as the agent of J. C. Fuerstenberg, built the fence on the south and west sides of section 39, and these fences, together with the McDowell fence on section 40, completely inclose section 39; and that these fences constitute an inclosure without a break in the occupancy of the section by J. C. Fuerstenberg, through his agents, Collier, Davis, and Turner, until the death of J. C. Fuerstenberg in 1914; that Turner occupied the land at the time of J. C. Fuerstenberg's death, and, upon the death of Turner, it was leased to the defendant Cromartie,

who continued to hold possession until filing of this suit. No attempt was m' controvert the evidence of possess' shown by this testimony, and no witness w.. introduced by plaintiff in error on this issue. The finding of the jury, therefore, is supported by the evidence.

After Cromartie's tenancy commenced, he erected improvements upon the property, and there has been no break in his possession. The act of taking actual, visible possession of land, inclosing it with fences, using, cultivating, and enjoying it, of itself evidences an intention upon the part of the occupant to appropriate it and as an evidence of a claim of right and an intent by the one who occupies it, either in person or by tenant, to hold it as his own. Such taking is an actual and visible appropriation of the land, commenced and continued under a claim of right wholly inconsistent with the claim of the record owner. Vardy built the fence on his south line, and as the fence on the north line of section 39 in 1898, and that fence was being maintained when Collier completed the fencing of the section in 1902.

Under the ten years' statute of limitations (Rev. St. 1925, art. 5510) a naked trespasser may by entering the land of another without any written evidence of right, thereto acquire title thereto by simply pursuing the terms of the statute, and no further notice of his adverse claim is necessary than his possession, which must be open, notorious, hostile, and visible by cultivating, using, or enjoying in any manner the use to which it may be adapted. Visible, notorious possession under a claim of right against the true owner takes the place of muniments of title. And possession under the statute means actual residence, or cultivating, using, or enjoying the land, such as will give notice to the owner of the adverse holding, and such possession may be by tenant as well as in person. Carlock v. Willard (Tex. Civ. App.) 149 S. W. 365; Krause v. Hardin (Tex. Civ. App.) 222 S. W. 311; R. S. art. 5513; Bruce v. Washington, 80 Tex. 368, 15 S. W. 1104; Lott v. Dashiell (Tex. Civ. App.) 233 S. W. 1110; Houston Oil Co. v. Choate (Tex. Com. App.) 232 S. W. 285.

A careful review of the facts convinces us that the defendants in error discharged the burden of establishing title under the statute of limitation of ten years. Bowles v. Watson (Tex. Civ. App.) 245 S. W. 120; Philadelphia Trust Co. v. Johnson (Tex. Civ. App.) 257 S. W. 280; Burroughs v. Smith (Tex. Civ. App.) 8 S.W.(2d) 301; Temple Lbr. Co. v. McFarland (Tex. Civ. App.) 264 S. W. 298.

We find no reversible error in the record, and the judgment is affirmed.