SAN ANTONIO & ARANSAS PASS RAILWAY COMPANY ET AL. v. W. D. TURNER.

Decided April 11, 1906.

**1.—Best Evidence—Written Memorandum.**

Accounts and written memoranda, if used as original evidence, must be shown to be original and contemporaneous entries; but a witness who weighed live stock may testify to their weight using, to refresh his memory, copies of the weight entries made by him from the original memorandum and known to be correct.

**2.—Carriers—Connecting Lines—Joint Liability.**

Though articles 331a, 331b, Sayles' Civil Statutes, may not preclude a connecting carrier from making an independent contract limiting its liability on a through shipment to damages inflicted on its own line, all are jointly liable for the entire damage where, without such restriction, they acquiesce in and act on the contract for through shipment.

**3.—Carrier—Negligence—Time of Transportation.**

The carrier's obligation with respect to transportation within a reasonable time should be defined as a duty to exercise ordinary care to that end.

**4.—Requested Charge—Abstract Question.**

A charge presenting only an abstract question is properly refused; circum-

stances rendering it otherwise, such as argument of counsel, should be preserved in the record by bill of exceptions.

### 5.—Damages—Fundamental Error.

The submission to the jury of items of damage in support of which there is no evidence is fundamental error and ground for reversal.

Appeal from the District Court of Milam County. Tried below before Hon. R. B. Pool.

*J. W. Terry, J. M. Ralston, O. L. Kidd,* and *Henderson & Lockett,* for appellants.—No secondary or inferior evidence shall be substituted for any evidence of a higher nature which the case admits of and the party can produce. Garrett v. Garrett, 47 S. W. Rep., 77; Watson v. Boswell, 61 S. W. Rep., 409; Byrnes v. Pacific Express Co., 4 C. C. (Willson), 286; Pohl v. Bradford, 25 S. W. Rep., 984; Theus v. Jipson, 3 App. C. C., 232; Prior v. North T. Bank, 29 S. W. Rep., 85; Eppler v. Brown, 30 S. W. Rep., 710-11; Brown v. Williams, 31 S. W. Rep., 255; 17 Cyc., 466, 471-2, 512.

It is the duty of a carrier to accept freight for shipment to a point beyond its line, to ship to end of its own line, and there to deliver to a connecting carrier; and in the absence of a special contract of shipment whereby a carrier specifically undertakes the transportation of freight to a point beyond its line, connecting carriers over whose lines a through shipment of freight is transported are severally liable, and each liable only for the damage which may occur on its own line. Rev. Stats., arts. 4435-4441; Inman v. St. Louis, etc., Ry., 14 Texas Civ. App., 50; Gulf, etc., Ry. v. Griffith, 24 S. W. Rep., 362; McCarn v. International & G. N. Ry. Co., 84 Texas, 357; Myrick v. Railway, 17 U. S., 358; Ft. Worth & D. C. Ry. Co. v. Whitehead, 6 Texas Civ. App., 596; Hunter v. Railway, 76 Texas, 195.

The measure of damages resulting from negligent delay is the difference between the market value of the hogs at the time and in the condition they would have arrived, if transported with ordinary and reasonable care and diligence, and their market value at the time and in the condition in which they did arrive. Gulf, C. & S. F. Ry. Co. v. Hughes, 31 S. W. Rep., 411-412; Mexican National R. R. Co. v. Garcia, 26 S. W. Rep., 780; Gulf, C. & S. F. Ry. Co. v. McAuley, 26 S. W. Rep., 475; Missouri, K. & T. Ry. Co. v. Webb, 20 Texas Civ. App., 438.

*Wallace & Camp,* for appellee. (No briefs were on file.)

FISHER, Chief Justice.—This is a suit for damages to two shipments of hogs by the appellee, against both railway companies. Verdict and judgment were in appellee's favor for $112.43. The hogs in controversy were shipped by appellee from Rockdale, Texas, to Fort Worth, Texas. They were transported from Rockdale to Cameron by the San Antonio & Aransas Pass Railway Company, and from there over the Gulf, Colorado & Santa Fe Railway to their destination, Fort Worth. One shipment was in December, 1904, and the other was in January, 1905. The damages claimed arose from the alleged negligent delay of both roads in getting the hogs to market, which delay resulted in a

shrinkage of weight. It is also claimed that 11 head of the hogs were not delivered at destination, and that by reason of the delay an extra feed was required by each shipment.

The first and second assignments of error complain of the evidence of the plaintiff, the witness Turner, as set out in bill of exception number 2. The proposition submitted under this assignment is as follows: "The highest degree of proof of which the case from its nature is susceptible must, if accessible, be produced. In other words, no secondary or inferior evidence shall be substituted for any evidence of a higher nature which the case admits of and the party can produce." The evidence objected to substantially is as follows: The plaintiff testified that at the time he bought the hogs he made upon check stubs a memoranda of their weight; that the book from which he was testifying was not the original memorandum, but that after he had received unsatisfactory accounts of sales of his hogs, he had transcribed the weights from the check stubs upon which the original entries were made to the memorandum book from which he was testifying; that he made no search for the stubs for the purposes of this case; that those check stubs would show the exact number of the hogs purchased, and their weight; that he remembered the fact that there was a discrepancy in the weights and number of head, but had to refer to this memorandum or day book to get the exact figures as to the weights; that he did not make the entries in this memorandum book until after he had received returns of each of the two sales, and the sales being unsatisfactory, he then entered the weights of each shipment, as shown by the check stubs and made entries in this memorandum book.

It appears from the bill of exceptions that the defendants objected to this testimony, and moved to exclude it on the ground that the check stubs referred to were the best evidence, and that they were in plaintiff's possession and accessible, and that plaintiff's testimony as to the weights was secondary and inadmissible. These objections were overruled.

The question as to refreshing recollection by memoranda, and as to the admissibility of entries, has been recently considered by this court in the case of International & G. N. R. R. Co. v. August Startz, in an opinion handed down February 21, 1906, which is not yet reported. If the entries which were taken from the check stubs are shown to be correctly transcribed in the memorandum book, and the object and purpose is merely to use the memorandum for the purpose of refreshing recollection, it would be unnecessary to produce the original; which, in this instance, is shown to be the check stubs. This question is passed upon in the case referred to, in which we cited Finch v. Barclay, 87 Ga., 393, and Houston & T. C. R. R. Co. v. Burke, 55 Texas, 342, and reference is also made to International & G. N. R. R. Co. v. Blanton, 63 Texas, 111. But if the weights are to be established by the entries upon the check book, and it is used for that purpose as original evidence, of course the stubs must be produced or their absence accounted for before it would be permissible to introduce secondary evidence of their contents.

In view of another trial, while the question is not raised, we will notice another branch of this evidence as stated in the bill of exception. The witness stated this: That he did not make the entries in the memorandum book "till after I had returns of each of these two sales and the

sales being unsatisfactory to me, I then entered the weights of each shipment, as shown by the check stubs and entries made in this memorandum book." This is to some extent confusing. We do not understand fully whether this was intended to mean that he entered the returns of sales in the memorandum book. Of course, any weights shown in the returns of sales, as furnished to him by the parties who made the sales, would not be memoranda from which he could testify, because it would be made by others; unless it was made in his presence and he knew of its correctness. As said before, this branch of the testimony is confusing, and we do not just exactly understand its meaning. Confining the ruling of the court to the specific objection stated, that is, that the best evidence was not produced, we overrule these assignments, provided the memoranda was shown to be correct, and was merely used for the purpose of refreshing recollection. As said before, the subject is discussed in the case referred to.

The third, fourth and fifth assignments of error raise the proposition that the court erred in refusing an instruction to the effect of limiting the liability of each road to its own line. The evidence in the record shows that this was a through shipment, and it does not appear but that the contract of carriage made with the Aransas Pass was recognized, acquiesced in and acted upon by both carriers. Articles 331a and 331b, Sayles' Civil Statutes, which relate to domestic shipments, provide for an action and judgment against both or all carriers, where the transportation is under a through contract of carriage, which is acquiesced in and acted upon by the carriers. This case seems to come within these provisions of the law. (Gulf, Colorado & Santa Fe Railway Co. v. Terry & McAfee, 13 Texas Ct. Rep., 991.) This case in effect holds that as to domestic shipments there can be no contract against joint liability; and possibly it is not necessary for us to criticise that case or to express any view contrary to the doctrine there announced, as this case can clearly rest upon the provisions of the statute, for the reason, as above stated, that it does not appear that the Santa Fe transported the shipment upon any separate contract. But, however, we desire to say that this court in the case of Gulf, Colorado & Santa Fe Railway Co. v. Short, 51 S. W. Rep., 262, held that it was not the purpose of the two articles of the statute mentioned to deny the right of one or more of the connecting carriers to execute separate and independent contracts limiting its liability to its own line; that the statute provided for joint liability where the contract of through carriage was recognized, acquiesced in or acted upon by the carriers. This is substantially the construction placed on the law by the Supreme Court in Texas & Pacific Ry. Co. v. Lynch, 97 Texas, 29. In view of the evidence, we hold that these assignments are not well taken.

In view of another trial, we suggest that the court so frame its charge as to meet the objection urged in appellant's seventh assignment of error. Abstractly considered as a proposition of law, the railway company must transport the shipment within a reasonable time, which was the instruction of the court; but to be accurate, the instruction should be to the effect that the roads must exercise ordinary care to transport within a reasonable time.

The charge complained of in the eighth assignment of error was cor-

rectly refused. It presents an abstract question. There is nothing stated in the record that tends to show that the question was important. Of course it is true that the Santa Fe Railroad would not be required to delay its regular freight trains, unless it had contracted so to do. It is possible something may have been said in the argument of the case to the contrary, but if so it does not appear from the record.

The charge on the measure of damages complained of in the ninth assignment of error will be corrected on another trial. It was not what· the hogs were actually sold for in Fort Worth at the time they were sold, but what was their market value in their then condition.

The tenth assignment of error is not submitted as a proposition, but under it and the ninth assignment is submitted a proposition. The proposition submitted fits the question raised in the ninth assignment, but not that presented in the tenth assignment. But, however, the question raised in the tenth assignment is more suggestive of an argument than a proposition of law, and if we were disposed to consider it, we are not prepared to hold that the charge, as requested, was not properly refused.

The remaining assignments of error raise questions of fact, all of which are overruled.

There is an error in the record for which the judgment must be reversed, which we regard as fundamental. The verdict and judgment is for $112.43. There is evidence in the record as to two items of damages sustained by the plaintiff, $10 for extra feed of each shipment of hogs, amounting in the total to $20. As to any other sum or item of damages sustained by the plaintiff the record is silent. The trial court submitted the case to the jury upon the theory that there was a loss of so many head of the hogs, and that there was a deterioration in market value of the others on account of unreasonable delay. What amount of loss and damage, if any, the plaintiff sustained on this account, the evidence does not show.

Judgment and cause remanded.

*Reversed and remanded.*