FOX et al. v. CHRISTOPHER & SIMPSON IRON WORKS CO.  (No. 7449.)

(Court of Civil Appeals of Texas.  Galveston. Nov. 19, 1917.  On Motion for Rehearing, Jan. 10, 1918.)

1. MECHANICS' LIENS &⇒304(1) — SUBCONTRACTOR'S LIEN — PERSONAL LIABILITY OF OWNERS.

Under Const. art. 16, § 37, and Rev. St. art. 5621, a materialman, giving the owners proper notice of its claim against the contractor, established a lien against the property; but such lien did not create a personal liability of the owners for the payment of the claim.

2. MECHANICS' LIENS &⇒115(4) — LIABILITY OF OWNER—CONTRACT PRICE—STATUTE.

Under Const. art. 16, § 37, giving materialmen a lien, and requiring the Legislature to provide for its enforcement, and Vernon's Sayles' Ann. Civ. St. 1914, art. 5623, providing that in no case shall the owner be compelled to pay a greater sum for materials furnished, etc., than the original contract price, and Rev. St. art. 5621, allowing any materialmen, etc., on written notice to the owner of the materials furnished and amounts due to fix a lien, a materialman, properly filing an account fixed its lien, though the owner, after notice, paid the original contractor sums exceeding the claim of the materialman and finally paid the full contract price, as the proviso of article 5623 did not destroy the lien given by article 5621.

3. MECHANICS' LIENS &⇒305, 317—MATERIALMEN—JUDGMENT.

One furnishing material to a building contractor could not recover on a bond given by a surety company to indemnify the owner against loss, nor against the surety company's contractor for the completion of the building.

4. MECHANICS' LIENS &⇒317—SURETY BOND—RECOVERY BY MATERIALMAN.

Where a surety company, which had given an indemnity bond to the owner, after the contractor's abandonment of the work contracted with another for its completion and agreed with the owners to pay specified materialmen's claims and to release any materialmen's liens, a materialman could maintain a suit against such surety and its contractor jointly and severally.

5. WITNESSES &⇒255(2)—USE OF MEMORANDUM.

In an action to enforce a materialman's lien, testimony of a witness, relying upon his personal knowledge as to the items furnished by the materialman on the ground that he had made a list of the items, and had handled and checked the items, and had delivered them to the carrier and taken a bill of lading, was admissible, where he was not relying upon the list of items, and used it only to designate or explain what items were shipped.

6. EVIDENCE &⇒158(28) — BEST AND SECONDARY EVIDENCE—BOOKS OF ACCOUNT.

In such action, a deposition of the materialman's former employé having general knowledge of its business, and who had handed the notary an itemized statement showing the material furnished, as further shown by an exhibit attached to deposition, and who had knowledge of the credits and attended to collections, was admissible over the objection that the books of original entry, showing the items and unpaid balances would have been the best evidence, as the books could not be attached to the deposition, and as it was proper to attach thereto a copy of the book entries.

7. MECHANICS' LIENS &⇒280(1)—MATERIALMEN'S LIEN — ACTION TO ENFORCE — EVIDENCE.

In an action to enforce a materialman's lien, consisting of various items of iron work, testimony of a subcontractor under the construction company that he was told that the materialman would furnish such iron work was properly admitted, to show that the material furnished was used in the construction of the building.

Error from District Court, Harris County; Wm. Masterson, Judge.

Suit by the Christopher & Simpson Iron Works Company against Henry S. Fox, Jr., and others, as owners, and against the Ætna Engineering & Construction Company, the National Surety Company, and J. B. Cochran, to enforce a subcontractor's lien. Judgment for plaintiff, and the defendants, other than the Construction Company, bring error. Reformed and affirmed.

Moody & Boyles, of Houston, for plaintiffs in error.  F. Charles Hume, of Houston, and Henry T. Ferriss, of St. Louis, Mo., for defendant in error.

LANE, J.  This suit was instituted by Christopher & Simpson Iron Works Company, hereinafter, for convenience, called the Iron Works Company, against Henry S. Fox, Jr., Mrs. Leonora H. Fox, Mrs. Maud Fox Twyman, and her husband, W. C. Twyman, Mrs. Gladys Louise Fox Hilliard and her husband, Walter Hilliard, owners of a certain lot and improvements thereon in the city of Houston, who for convenience are hereinafter called

the Foxes or owners, and against Ætna Engineering & Construction Company, hereinafter called Construction Company, the National Surety Company, hereinafter called Surety Company, and J. B. Cochran, to recover an alleged debt of $1,456.55, and for a foreclosure of an alleged materialman's lien against lots 8, 9, and 10, in block 271, in the city of Houston, owned by the Foxes.

The Iron Works Company alleged: That Henry S. Fox, Jr., acting for himself and for the other owners, executed a contract with the Construction Company for the erection of a three-story and basement brick building upon the property above described for the sum of $40,016. That the owners entered into a bond for the faithful performance of said contract, with the Surety Company as surety. That the Iron Works Company entered into a contract with the Construction Company to furnish certain iron work for the sum of $4,265, upon which contract there was due at the time of suit the sum of $1,465.55. That on or about the 12th day of July, 1913, the Construction Company abandoned its contracts with the owners and with the Iron Works Company and its officers, and left the state for parts unknown. That upon the abandonment of said contract the Surety Company assumed the owners' contract with the Construction Company and received from the Iron Works Company for the owners such material as had not at that time been delivered by the Iron Works Company to the Construction Company. That all material covered by said contract between the Construction Company and the Iron Works Company had been delivered for the account of the owners, and had been used in the construction of said building. That the Iron Works Company had given notice to the owners of its lien, and had properly filed its lien with the county clerk of Harris county, Tex. That at the time of giving notice to the owners by the Iron Works Company the owners were indebted to the Construction Company in a sum exceeding that for which plaintiff sued.

It is further alleged that in November, 1913, the Surety Company and J. B. Cochran entered into a contract with the owners for the completion of said building (after the abandonment by the Construction Company) and received from the owners under said contract the sum of $10,490.35, being the amount remaining due for the work agreed to be done under said original contract, and for extras, and agreed to complete said building, and to protect and indemnify the owners against any claim that might be asserted by any materialman, laborer or other person having furnished material or performed labor in the erection of said building, and that said Surety Company and J. B. Cochran had appropriated the fund out of which should be paid the balance due the Iron Works Company, with accrued and accruing interest.

It prayed: (a) For personal judgment against the owners, Foxes, for the sum of $1,456.55, costs, and for foreclosure of its lien against the building, lots, and improvements; (b) for personal judgment against J. B. Cochran and the Surety Company for $1,456.55, with interest and costs; (c) for judgment against the Construction Company, cited by publication, for $1,456.55, with interest and costs.

The Foxes answered by general demurrer. They further answered, admitting the execution of the contract between Fox, Jr., as trustee, and the Construction Company, admitting the correctness of the description of the property on which the building was erected, and admitting the execution of the contract of November, 1913, between Henry S. Fox, Jr., Surety Company, and J. B. Cochran. They denied the other allegations of said pleading. They further answered that, at the time of the abandonment of the contract with the owners by the Construction Company, the owners had paid upon the contract price of said building to the Construction Company the sum of $19,112; that thereafter J. B. Cochran and the Surety Company contracted with the owners to complete said building according to contract and specifications for the sum of $20,904, same being the reasonable and necessary cost of completing said building, and that the owners had expended in the erection of said building the full sum of $40,016, said sum being the full contract price of said building, according to the original contract of March 18, 1913; that in the completion of said building the Surety Company and J. B. Cochran, in addition to the payment made to them by the owners, expended the further sum of over $5,000 for material furnished and labor performed in the completion of said building; that because the owners had expended the sum of $40,016, being the full original contract price for the erection of said building under said contract of March 18, 1913, the Iron Works Company was entitled to no lien against owners.

J. B. Cochran and the Surety Company, in addition to certain special exceptions, answered by general denial. The Construction Company made no answer.

The cause was tried before the court without a jury, and judgment was rendered in favor of the Iron Works Company against the Construction Company, "foreclosing its claim or right, if any, in, to, or against the said Fox building, and lots 5, 4, and 3, in block 271, in the city of Houston, Texas"; against the owners and each of them for the sum of $1,456.55, with interest thereon from August 22, 1913, at the rate of 6 per cent. per annum, and for a foreclosure of its materialman's lien upon said building and lots against said owners; against the Surety Company for the sum of $1,456.55, with interest thereon from August 22, 1913, at the rate of 6 per cent. per annum; and against J. B. Cochran for the sum of $1,456.55, with interest thereon

from the 22d day of August, 1913, at the rate of 6 per cent. per annum. From the judgment all defendants, except the Construction Company, have appealed.

By the first and second assignments, which are grouped in appellants' brief, it is insisted that the court erred in rendering judgment in favor of the Iron Works Company against the owners of the property, and each of them, for the sum of $1,456.55, together with a foreclosure of its materialman's lien against them to secure the payment of said sum.

[1] Their first contention, that the court erred in rendering judgment in favor of the Iron Works Company against the owners, either severally or jointly and severally, for $1,456.55, or for any other sum, must be sustained. The debt sued for by the Iron Works Company was not an obligation of the owners, or either of them, either primarily, by assumption, either expressed or implied, nor is it made such by any law. While it is true that by virtue of article 16, § 37, of the Constitution, and article 5621, Revised Statutes of Texas, and by reason of the fact that the Iron Works had given the owners proper notice in due time of its claim against the Construction Company, a lien was established against the property in question in favor of the Iron Works Company, the existence of such lien did not create a personal liability of the owners of the property for the payment of the debt.

[2] Their second contention is that by the terms of their contract with the Construction Company they agreed to pay $40,016 for a completed building; that at the time the contract was abandoned by the Construction Company, July 12, 1913, they had paid the Construction Company the sum of $19,112; that thereafter the owners contracted with J. B. Cochran and the Surety Company to complete the building from its then incomplete state for the sum of $20,904, same being the reasonable cost for its completion; that, having expended the full original contract price for the building, they were not liable to personal judgment for the claim of the Iron Works Company for material furnished for the building, nor was the Iron Works Company entitled to a lien on the building and lots by reason of article 5623, Vernon's Sayles' Statutes 1914, relating to materialmen's liens, which among other things provides:

"That in no case shall the owner be compelled to pay a greater sum for * * * material, etc., furnished, as provided in this chapter than the price or sum stipulated in the original contract between such owner and the original contractor or builder of such house," or building.

This latter contention cannot be sustained. Article 16, § 37, Constitution of Texas, provides that materialmen shall have a lien upon the building for material furnished therefor, and the Legislature shall provide by law for the speedy and efficient enforcement of said lien. Article 5621, Revised Statutes of Texas, provides that any person, firm, lumber, dealer, mechanic, etc., or subcontractor, who may furnish material to erect any house under or by virtue of a contract with the owner, contractor, or contractors, by giving written notice to the owner, or his agent, of the items furnished to the contractor or subcontractor, showing how much there is due and unpaid on material furnished by said materialman under said contract, may fix and secure the lien provided for in the chapter of the statutes relating to fixing liens of materialmen for material furnished by them at the time or subsequent to the giving of the written notice, above mentioned.

It is shown by the evidence that on May 5, June 10, and July 10, 1913, the Iron Works Company gave the owners written notice, in manner and form as required by law, of the bill of material furnished by it to the contractor, Construction Company. The evidence also shows that the account of the Iron Works Company had also been properly and truly filed with the county clerk of Harris county, so as to fix its lien. The evidence further shows that, after the giving of such written notice, the owners paid the contractor, Construction Company, up to July 12, 1913, the time at which the Construction Company abandoned its contract, sums of money largely exceeding the claim of the Iron Works Company, of which the owners had notice. We think, to hold that the Legislature intended to, or did by the proviso to article 5623, supra, destroy the lien given to materialmen, etc., by article 5621, supra, is wholly untenable, and therefore we decline to sustain the contention of appellant that no lien was secured by the Iron Works Company on the building in question, because the owners finally paid out to the contractors the full amount of the contract for the building, although a large portion of such price was paid after the lien of the Iron Works was fixed and secured in manner as provided by law.

[3, 4] By the third, fourth, fifth, and sixth assignments insistence is made that the court erred in rendering judgment against the Surety Company and against J. B. Cochran in favor of the Iron Works Company, because (1) the bond entered into by it with the owners of the property was a bond of indemnity only, and protected only the owners against loss; (2) that, the owners having expended the full original contract price for the building, no judgment could be had either against the owners or against the Surety Company or Cochran; (3) that the contract of November, 1913, entered into by the Surety Company and J. B. Cochran with the owners to complete the building from its then incomplete state, was distinctly an independent contract between the owners of the property and the Surety Company and Cochran; and that there is no privity of contract between the Iron Works Company and the Surety Company and Cochran which would entitle the Iron Works Company to

recover judgment against either the Surety Company or Cochran on account of said contract.

The first contention is sustained. The Iron Works Company could not recover under the bond mentioned. General Bonding & Casualty Ins. Co. v. Waples Lumber Co., 176 S. W. 651. The second contention cannot be sustained, for the same reason given for overruling the same contention under the first and second assignments. The third contention cannot be sustained, for the reason that by the fourth section of the contract of November, 1913, the Surety Company and Cochran contracted and agreed with the Iron Works Company as follows:

"Fourth. To release and discharge, or cause to be released and discharged, within two years from the date hereof, time being of the essence of this contract, any lien of any kind for material furnished or work done, heretofore filed or to be filed or asserted against said improvements and premises, and agree further to pay for and satisfy as they mature each and every claim incurred for material or labor in and about the erection and construction of said improvements, and agree to indemnify said H. S. Fox, Jr., trustee, and the other owners of said property and improvements, against, and hold harmless from, all such liens and demands and from all liability and claim therefor, and from all consequent loss and expense."

That the fourth paragraph of the contract of November, 1913, between the Foxes, the owners of the building, and the Surety Company and J. B. Cochran, is an affirmative promise to the owners that the Surety Company and Cochran would pay and satisfy each and every claim incurred for material used in and about the erection and construction of the building as they mature, and to release and discharge any lien for material furnished, theretofore filed or asserted against said property, cannot be questioned. In the case of Bonding & Casualty Ins. Co. v. Waples Lumber Co., 176 S. W. 651, Judge McMeans, in speaking for this court, said:

"We think there is no doubt that Breath and wife could have required of Butler a bond-binding him and his surety to pay all debts contracted with persons for materials, whether the claims might be asserted against the property of the owner as a lien or not, and that under such a contract, if it had been made, the materialmen might sustain an action against the contractor and the surety upon the bond. Bank v. Railway Co., 95 Tex. 184, 66 S. W. 203. Thus, in Nelson v. Stephenson, 168 S. W. 61, in which a bond was required of, and given by, a building contractor, the bond containing the condition that the contractor would faithfully perform his contract and pay all indebtedness that might be incurred, and being given to 'all parties who might furnish labor or materials on the contract hereinbefore mentioned,' and 'to be paid to said school district No. 1, Sinton, Tex., and to said parties who may furnish labor and material,' it was held that the bond 'inured to the benefit of the laborers and materialmen to whom it was made payable. They were by the plain terms of the contract privies thereto and fully protected thereby, and each, or any of them, could prosecute a suit on the bond in his own name'—and cite many authorities in support of the ruling. In United States Fidelity & Guaranty Co. v. Thomas, 156 S. W. 573, the obligation of the building bond was to 'pay all claims and liens,' and 'we also agree that the obligation of this bond shall inure to the benefit of materialmen and subcontractors.' In discussing the language quoted, the court says: 'Counsel for appellees admit that without this provision the suit [of the materialmen and subcontractors] could not be maintained. With it inserted in the bond, are the appellees beneficiaries and entitled to a right of action thereon? We have reached the conclusion that this question should be answered in the affirmative.' "

We have reached the conclusion that the Iron Works Company can maintain its suit against the Surety Company and J. B. Cochran under the terms of the contract of November, 1913, and that the trial court should have rendered judgment in favor of said company against the Surety Company and J. B. Cochran, jointly and severally, for such sum as was shown by the evidence to be due said Iron Works Company for material furnished by it for the erection of the building.

By the seventh assignment it is insisted that the court erred in rendering judgment in favor of the Iron Works Company for three distinct and separate recoveries for $1,456.55, the full amount of its claim, against the three sets of defendants, respectively—that is, a separate award for $1,456.55 against the Foxes, the owners, and each of them, a separate award of $1,456.55 against the Surety Company, and a separate award of $1,456.55 against J. B. Cochran—because if the Iron Works was entitled to judgment against all of said parties, such judgment should be for $1,456.55 against them jointly and severally, and not severally. We have already held that no personal judgment could be properly rendered against the owners for any sum, and it is unnecessary to repeat that holding under this assignment. We have also hereinbefore stated that we thought the court should have rendered judgment in favor of the Iron Works Company against the Surety Company and J. B. Cochran jointly and severally for $1,456.55, the amount of the Iron Works Company's claim. Having reached such conclusion, the seventh assignment is sustained, and the judgment of the trial court will be reversed and reformed, and judgment will be here rendered in conformity to the views above expressed.

[5] By the eighth, ninth, and tenth assignments, grouped in appellant's brief, it is urged that the court erred in admitting in evidence the testimony of Henry Heck as follows:

"This is a duplicate of the statements made right off the original copy that I made of all the material that was shipped for this job, with exception of the last two items of 'brass thresholds,' dated August 22, 1913. The numbers on the left-hand side columns are numbers of dray tickets which I made out at the time of loading the goods. After loading this material on the wagons and delivering it to the railroad company, I then got bills of lading from the railroad company for this material for shipment to the Ætna Engineering & Construction Company at Houston, Texas, for the Fox job. I acquired it [items of shipment] as part of my duties as shipping clerk for Christopher & Simpson Iron Works Company, and I made the origi-

nal list, of which Exhibit A is a copy, at the time of shipping the material, checking off each item and putting it on the dray ticket, as shown by this statement. This list shows all the material that was shipped for this job. It shows correctly the items of shipment and delivery by Christopher & Simpson to the railroad company."

These assignments are overruled. The witness Heck relied upon his personal knowledge in testifying of the items sold by the Iron Works Company to the Construction Company, as he made a list of the items so sold, handled the shipment of such items, checked them as they were loaded on the drays, delivered them to the railroad company, and got bills of lading from the railroad company for the same. He was not relying upon the list as his source of knowledge of the matters testified about, but made use of it only as a means of designating and explaining to the court what items were so shipped to the Construction Company. If a copy of the list was offered or admitted in evidence, such fact is not disclosed, either in the assignments or the statement thereunder.

[6] The witness George Bromeyer testified by deposition as follows:

"I have been with the Christopher & Simpson Iron Works Company for the past 19 years in various positions; for the past 3 years in the capacity of assistant treasurer. My duties are to open all mail received by the firm and thereby acquire a general knowledge of the run of the business. After opening the mail, I distribute same to the various departments for their attention, and see that all matters are properly attended to. When receiving checks, I keep a personal record of them, and turn them over to the cashier, to be entered upon the company's books, and thereby know at all times how the account stands. I have handed to the notary itemized statement showing the iron work material furnished by the Christopher & Simpson Iron Works Company for and used in the construction of the building and improvements on the Fox property, corner of Main street and Dallas avenue, Houston, Tex., pursuant to a contract with the Ætna Engineering & Construction Company. Said statement is marked 'Exhibit A' and is attached to these depositions. I have knowledge of the items of shipments and deliveries of such material, and of payments made, and of balance due thereon and unpaid. As to the shipments of all the material, I acquired the knowledge by the records of our shipping clerk, Mr. Heck, and thereby can tell whether or not the material has been shipped. After the material is shipped and payments become due I render an estimate calling for payments in accordance with the terms of our contract, and did so in this case, and I follow up this record to see whether or not these payments are made in accordance with the terms of the contract, and, if not, I make the collection, if possible, and in this manner I have thorough knowledge of this account and all of the credits shown on the last page of 'Exhibit A.' Whenever the contract calls for delivery f. o. b. cars St. Louis, with freight allowed to the point of destination, and the consignee sends us a receipt for the freight charges on different shipments which he has paid, they are credited to his account, and the credits of freight, as shown on 'Exhibit A,' page 3, are in accordance with the freight receipts which were sent in for credit by the Ætna Engineering & Construction Company. Said duplicate of copy shows correctly the items of shipments, deliveries, payments, and unpaid balance. I know the facts concerning which I have testified, by reason of my duties and connection with this account, as shown in my answers to the foregoing questions."

By the eleventh assignment complaint is made of the admission of this testimony, for the reason that it is not the best evidence of such shipment, deliveries, payments, and unpaid balance, in that it was shown the Iron Works Company kept books reflecting the various items of shipment, deliveries, payments, and unpaid balances; that said books of original entry would have been the best evidence; that said primary evidence is not accounted for as a predicate for secondary evidence; and because such testimony is but the conclusion of the witness. We overrule the assignment, as it is apparent that the books of the Iron Works Company could not be attached to the deposition, and it was proper to attach thereto a copy of the book entries. The evidence was properly admitted.

[7] The witness C. M. Lane testified, by deposition, that as a subcontractor under the Construction Company he placed the steel and iron in the Fox building; that he was told by Mr. Haire, of the Construction Company, and a representative of the Iron Works Company, that the Iron Works Company would furnish the steel and iron for the building; that it was furnished under a contract entered into between the Construction Company and the Iron Works Company; that he knew that the steel and iron furnished by the Iron Works Company went into the Fox building, because he checked the items from an invoice made by the Iron Works Company for the Construction Company after the material arrived at Houston; that it was placed in said building in accordance with certain plans, made by the Iron Works Company; and that no such steel and iron were used in the erection of said building, other than that furnished by the Iron Works Company. By assignments 12 to 18, inclusive, appellant complains of the admission of so much of the testimony of the witness Lane as states that he performed the work according to a certain contract, that he had put the material in the building according to certain plans and specifications furnished by the Iron Works Company, that Mr. Haire and another had told him the Iron Works Company would furnish the steel and iron for the building, and that there was no steel or iron, other than that furnished by the Iron Works Company, used in the erection of the Fox building.

The propositions under these assignments are in substance that the testimony was hearsay. The undisputed evidence shows— indeed, appellants admit in their answer— that the Iron Works Company had contracted to furnish the steel and iron for the Fox building, and hence the testimony of Lane that he was told the Iron Works Company would furnish such material could not have

injured the rights of appellants. Nor do we think that any of the other matters complained of were calculated to injure the rights of appellants. The testimony as a whole was admitted for the sole purpose of showing that the material sold by the Iron Works Company to the Construction Company was used in the erection of the Fox building, and was relevant and material upon such issue and was properly admitted. The assignments are overruled.

The nineteenth and twentieth assignments are overruled. The evidence was sufficient to support the findings of the court that the owners of the building had notice of the claim of the Iron Works Company at the time they paid the Construction Company, and that sums in excess of such claim were so paid after said notice was received by such owners.

There is no merit in the twenty-first assignment. The finding of the court that upon the abandonment of its work in the erection of the Fox building by the Construction Company the Surety Company assumed the contract of the Construction Company was immaterial and harmless. Such finding was unnecessary to support the judgment rendered.

We overrule the twenty-second, twenty-third, twenty-fourth, and twenty-fifth assignments. The evidence is sufficient to support the finding of the court complained of in said assignments. What has been said disposes of all of the assignments.

We have reached the conclusion that the judgment of the lower court should be, and the same is, here reformed, so that no personal judgment shall be awarded against Henry S. Fox, Jr., Mrs. Lenora H. Fox, Mrs. Maud Fox Twyman, or her husband, W. C. Twyman, Mrs. Gladys Louise Fox Hilliard, or her husband, Walter B. Hilliard, or either of them, for any sum shown to be due plaintiff, but judgment against them shall be against them jointly and severally only, foreclosing the materialman's lien of plaintiff, Christopher & Simpson Iron Works Company, upon lots 5, 4, and 3, block 271, Houston, Tex., and the building thereon and that the award in favor of said plaintiff against the defendants National Surety Company and J. B. Cochran shall be a judgment against them jointly and severally for $1,456.55, with 6 per cent. interest per annum thereon from the 22d day of August, 1913, and not two several judgments, as was awarded by the trial court. In all other respects the judgment of the trial court shall remain undisturbed. The judgment of the trial court, as here reformed, is affirmed.

Reformed and affirmed.

On Motion for Rehearing.

In our original opinion we held that the testimony, by deposition, of the witness Henry Heck, shipping clerk for defendant in error, with reference to a list of items alleged to have been sold and shipped to the Construction Company by the defendant in error, attached to his answers, was properly admitted in evidence. This testimony was in substance as follows:

"This is a duplicate of the statements made right off the original copy that I made of all the material that was shipped for this job, with exception of the last two items of 'brass thresholds,' dated August 22, 1913. The numbers on the left-hand side columns are numbers of dray tickets, which I made out at the time of loading the goods. After loading this material on the wagons and delivering it to the railroad company, I then got bills of lading from the railroad company for this material for shipment to the Ætna Engineering & Construction Company at Houston, Tex., for the Fox job. I acquired it [items of shipment] as part of my duties as shipping clerk for Christopher & Simpson Iron Works Company, and I made the original list, of which Exhibit A is a copy, at the time of shipping the material, checking off each item and putting it on the dray ticket, as shown by this statement. This list shows all the material that was shipped for this job. It shows correctly the items of shipment and delivery by Christopher & Simpson to the Railroad Company."

We also held that the testimony of the witness Bromeyer, assistant treasurer of the Iron Works Company, with reference to an itemized statement of the account between the Construction Company and the Iron Works Company, attached to his answers, was admissible. The testimony of this witness is set out in the original opinion and will not be recopied here. The account sued upon was verified, and not denied under oath.

Appellants have filed their motion for rehearing, and therein very vigorously attack our holdings in the two particulars stated above. While there has been some confusion as to whether such testimony is admissible under the facts of the present case, we are of the opinion that under the authority of the best reasoned cases such testimony was admissible. I. & G. N. Ry. Co. v. Startz, 42 Tex. Civ. App. 85, 94 S. W. 207–213; Railway Co. v. Blanton, 63 Tex. 109; Railway Co. v. Burke, 55 Tex. 342, 40 Am. Rep. 808; Railway Co. v. Turner, 42 Tex. Civ. App. 532, 94 S. W. 214.

We see no reason for receding from our former holding. The motion is refused.